## J. R. CHEEK v. JOHN E. FOSTER ET AL.

Decided April 25, 1908.

**1.—Boundaries—Apportionment of Excess—Cases Distinguished.**

In a suit to establish the boundaries between lots in a subdivision of a larger tract of land, evidence considered, and held not analogous to the cases of Welder v. Carroll, 29 Texas, 334, and Knippa v. Unlang, 27 S. W. Rep., 915, wherein an excess in distance between well-established outside boundaries was apportioned between intermediate tracts, and that the question of the correct location of the boundaries of the lot in question should have been submitted to the jury.

**2.—Same—Pointing out Boundary.**

The act of a common grantor in pointing out to his grantee the boundaries

of a tract conveyed to him is irrelevant and immaterial as against the calls in the deed and as against the rights of a subsequent grantee.

Appeal from the District Court of Harris County. Tried below before Hon. W. P. Hamblen.

*Harris & Harris,* for appellant.—Where a vacant space exists between two tracts of land, which call for each other, and between which the boundary line has not been actually marked on the ground, the true line will be determined by apportioning the vacant space between the contiguous owners in proportion to their respective interests, but where a tract of land is divided into a certain number of lots or blocks, of a uniform size, and by metes and bounds which can be easily ascertained, and a surplus is also left, any excess or deficiency will fall to such surplus and each regular lot or block will have its proper size and location. Welder v. Carroll, 29 Texas, 318; Sellers v. Reed, 46 Texas, 377; Halsell v. McCutchen, 64 S. W., 72; Baldwin v. Shannon, 43 N. J. Law, 596.

*Love & Channell,* for appellee Foster.

PLEASANTS, Chief Justice.—This is an action of trespass to try title brought by appellee, John E. Foster, against appellant and appellee, I. E. Dean. The only issue in the case is the true location of lot 21 in W. L. Holmes subdivision of the John Brown Jones survey in Harris County. The trial court instructed the jury to return a verdict for plaintiff locating said lot as claimed by plaintiff, and upon the return of such verdict rendered judgment in accordance therewith.

The evidence shows that in 1891 W. L. Holmes purchased of P. S. Humble a tract of land described as follows:

"Fifty (50) acres of land, less two and one-half (2½) acres, out of the John Brown Jones original grant of one-third of a league of land on the San Jacinto River, about 17 miles northeastwardly from the courthouse in the city of Houston. Beginning at a stake on the west line of the John Brown Jones one-third league grant and the W. B. Adams east line, about 1¼ miles south of the said San Jacinto River, at a white oak tree ten inches in diameter, marked E. N., facing the corner.

"Thence along said line 361 varas to a corner marked, a post oak.

"Thence east 782 varas to corner, a pine, marked X.

"Thence north 361 varas, to a corner and stake, adjoining Mrs. E. D. Taylor's tract of land.

"Thence west 782 varas, to a corner, and the beginning."

Holmes established his homestead upon this tract of land. In 1903 he sold to appellee, John E. Foster, a tract described as follows: "All that certain tract or parcel of land out of the W. L. Holmes 50-acre subdivision, out of the John Brown Jones one-third league of land in Harris County, Texas, near Humble, about 17 miles northeastwardly from the city of Houston, Texas, and being more particularly described as lot one in the W. L. Holmes subdivision; said lot

one being the extreme southeast corner of said Holmes tract, and being 208 and ¾ feet square."

On November 8, 1904, he filed for record in Harris County a map purporting to be a map of the "W. L. Holmes subdivision of 50 acres out of the John Brown Jones survey." This map is certified by W. A. Polk, who made the same, to be correct according to an actual survey made by him on the ground. It was duly recorded in vol. 1, page 94, of Map Records of Harris County, on November 9, 1904.

As shown on this map lot 21 is the eastern lot of a tier of nine lots lying along the southern line of the subdivided tract. A county road is shown on this map running north and south along the west line of the tract, and a strip 110 feet in width and designated as "Reserve" is shown along the east line of the tract. The tier of lots before mentioned lies between the county road and this "Reserve" strip. Commencing on the county road the first lot is numbered 13. This lot is 222 by 208.73 feet, its north and south lines being each 222 feet, in length. The remaining lots in the tier are numbered consecutively from 14 to 21, and lots 14 and 21 are each 208.73 feet square and contain one acre of land. The map further shows that between lots 14 and 15, 16 and 17, 18 and 19, and 20 and 21, there is a roadway 10 feet in width. As shown on the map the tract subdivided, including the "Reserve" strip of 110 feet, is only 2033.84 feet in length from east to west.

On December 1, 1904, appellee John E. Foster reconveyed to Holmes the land conveyed to him by Holmes in 1903 before described. This deed of reconveyance contains the following recital: "This conveyance is made by me for the purpose of having said Holmes convey to me the proper lot that I purchased and which is incorrectly described in the deed to me."

Thereafter on December 8, 1904, Holmes conveyed to appellee Foster "Lot Number twenty-one (21) of the W. L. Holmes subdivision of the 50 acres out of the J. B. Jones one-third league according to plat thereof recorded in vol. 1, page 94, Map Records of Harris County, Texas."

On the same day, December 8, 1904, Holmes conveyed to appellant Cheek, a portion of the reserve strip shown on the map before mentiond, describing the land conveyed as follows:

"All that certain tract or parcel of land situated in the county of Harris, State of Texas, and being a part of the John Brown Jones survey, and more particularly known as the reserve strip, which said strip is on the eastern side of the said 50-acre subdivision, and marked on the plat of same as Reserved; and which is 110 feet wide by 626 and 19-100 feet long, north and south, and containing about one and one-half acres of land; and which plat is recorded in vol. 1, page 94, of the record of maps, plats and additions of Harris County, Texas."

The uncontradicted evidence shows that the east line of the tract conveyed to Holmes by Humble and wife, by the deed before mentioned, is fixed and established from the pine tree marked X, referred to in the field notes in said deed, and as so fixed said line is 197.93 feet east of the line shown on the map before mentioned as the east

line of· the tract subdivided into the lots shown on said map. The map does not show this pine tree and there is nothing on the face of the map to indicate that the east line shown thereon is the east line of said original Holmes tract, except the caption or statement at the top of the map which is as follows: "W. L. Holmes Subdivision of 50 Acres out of the John Brown Jones Survey, Harris County, Texas."

The location of the county road, which is shown on said map as the western boundary of the subdivided tract, is unquestioned, as is the distance from this road to the east line of the subdivided tract.

We think it clear from this statement of the evidence that the trial court could not conclude as a matter of law that the east line of lot 21, owned by appellee Foster, was located 110 feet west of the true line of the 50-acre survey, or 197.93 feet further east from the county road than the distance shown on said map.

The court assumed in his charge to the jury that the undisputed evidence showed that the whole of the original Holmes tract was subdivided and that under the rule announced in Welder v. Carroll, 29 Texas, 334, and Knippa v. Umlang, 27 S. W., 915, the excess in the quantity of land subdivided should be apportioned between the various subdivisions shown on the map. This assumption of fact is not sustained by the evidence. The map purports to have been made from actual survey of the ground, and the only known and fixed object designated on the map is the county road. In the absence of any testimony tending to show the location of lot 21 as made by the original surveyor the jury might have fixed its location by the calls for course and distance from the county road, and as so fixed it would be located as contended by appellant.

The statement above quoted which appears at the top of the map would sustain the conclusion that the whole of the original survey of 50 acres was subdivided, but the calls for course and distance when applied to the only known and established object designated on the map, refutes this conclusion.

If the undisputed facts showed that the whole of the 50-acre tract was intended to be subdivided we do not think the rule announced in the above cited cases would be applicable. In each of those cases the question was the location of the boundary or division line between two grants. There was no evidence to show where this line was placed by the surveyor who located the grants. The grants called for a common boundary line and neither grant was senior in point of location. The outer boundaries of both grants were fixed, and as it was clear that all the land between the outside boundaries of the two surveys had been granted to the two grantees it was obviously equitable and fair to fix the division line so as to give each his proportion of the excess. The map in this case shows the exact dimensions of each of the several subdivisions and all of said subdivisions either adjoin each other or are separated by a roadway, the exact width of which is shown on the map, and the evidence indicates that the several subdivisions were actually located on the ground. We think the case is one which calls for the application of the general rule which requires that the footsteps of the surveyor should be followed in locating the lines of a survey.

Appellee Foster testified that Holmes pointed out the boundaries of his lot when he purchased; that the corners were marked by stakes and that the lines so pointed out to him located said lot about 100 feet west of the east line of the 50-acre survey. It is not clear from the testimony whether these corners were pointed out at the time of the first purchase which, as is before shown, was prior to the subdivision evidenced by the map and the execution of the deed under which he now holds, or at the time he received the deed under which he now holds. Of course the location of the first lot conveyed to Foster and which was reconveyed by him to Holmes would not be material unless the evidence should show that lot 21 subsequently conveyed to him was identical in location with the lot originally conveyed. And it matters not what land was pointed out to Foster by Holmes if the land so pointed out was not in fact within the boundaries of lot 21 as said boundaries were fixed by the surveyor and appear upon the map as against appellant. Appellee can only hold the land within the boundaries of lot 21 as fixed by the original survey of said lot.

What we have said disposes of all the material questions raised by appellant. For the reasons indicated the judgment of the court below is reversed and the cause remanded.

*Reversed and remanded.*